IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | § | CASE NO. 21-60098 |
| CORTLAND ENERGY, LLC, § | § | |
| Debtor. § | § | CHAPTER 11<br>SUBCHAPTER V |

| | | |
|---|---|---|
| CORTLAND ENERGY LLC §<br>  Plaintiff, § | § | |
| v. § | § | |
| PEARL SWITCH, LLC §<br>  Defendant. § | § | ADV. PRO. NO. _____ |

**COMPLAINT AGAINST DEFENDANT, PEARL SWITCH, LLC**

**To the Honorable David R. Jones:**

Cortland Energy, LLC. ("Cortland"), Debtor in the underlying bankruptcy case, and Plaintiff in this adversary, hereby files this Complaint (the "Complaint") against Pearl Switch, LLC ("Pearl Switch") and would represent as follows:

### I. **Jurisdiction**

1. This Court has jurisdiction over this dispute pursuant to 28 U.S.C.§§ 157 and 1334.

2. This is a core proceeding pursuant to 28 USC 157(b)(C).

3. Plaintiff consents to the entry of final orders or judgment by the Bankruptcy Judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution. *See* BLR 7008.

## II.  Parties

4.  Plaintiff, Cortland Energy, LLC, is an entity organized under the laws of the State of Texas and operating in the Houston, Texas area.

5.  Defendant, Pearl Switch, LLC, is an entity organized under the laws of the State of Texas and operating in the Houston, Texas area.

## III.  Acts of Agents

6.  Whenever in this petition, Plaintiff alleges that Pearl Switch did any act, Plaintiff means that its officers, agents, partners or employees performed or participated in the act on its behalf or under its authority.

## IV.  Factual Background

7.  To say that Pearl Switch is not a traditional lender would be a vast understatement. LeRoy Melcher formed Pearl Switch specifically for the purpose of making a business loan to Cortland. Indeed, Pearl Switch was formed on November 14, 2017—just six days before Melcher first sent Cortland the loan documents. *See* Ex. A, Email Forwarding Loan Documents, November 20, 2017.

8.  That Melcher was the true lender of the money to Cortland is not reasonably in dispute. Not only was Pearl Switch formed by him specifically for this purpose; it was not even the first "straw man" entity he considered using to disguise his involvement as a lender to Cortland. In fact, Melcher had sent a "term sheet" with substantially the same terms to Cortland the week before, on November 9, 2017, on behalf of a different entity, a company he called "Prairie Switch, LLC" (which apparently, was never actually formed). *See* Ex. B, Email Forwarding Term Sheet. And even further back in time, in July of 2017, Melcher discussed the possibility of making a loan to Cortland through yet another entity, this time his family trust. *See* Ex. C,

Email Regarding MGET Loan to Cortland.

9. The reason Melcher wanted to disguise his connection to Pearl Switch's loan to Cortland is simple: Cortland was, and had been for some time, his *own client.*

10. Melcher personally drafted both the original and amended operating agreements for Cortland. *See* Ex. D, Email Forwarding First Amended Operating Agreement. Moreover, Melcher had been giving legal advice to Cortland through its then three members—Steven Murphy, Huan Cong Nguyen, and Andrew Bejarano (who, in a further stroke of bad faith, Melcher later bought out, in 2019, when Melcher himself became a beneficial owner of Cortland)—for at least a year before the loan was made.

11. Indeed, Melcher continued to act as Cortland's trusted lawyer for several years *after* the loan was made, filing lawsuits and doing other traditional legal work on Cortland's behalf over the ensuing years. *See, e.g*, Ex. E, Release of Judgment Filed by Melcher in August 2020 as Cortland's Counsel. Astonishingly, Melcher was still acting as Cortland's lawyer in 2021 when he attempted, on various occasions in his capacity as the lawyer for Pearl Switch, to enforce the Promissory Note *against Cortland*.

12. Not only was Cortland Melcher's client, so too were Murphy and Nguyen. Melcher represented both Murphy and Nguyen in their individual capacities in their dispute with Bejarano (though he tried to disguise that involvement as well). Melcher also filed a lawsuit on Murphy's behalf in Harris County against Murphy's former employer, which spanned two years and was not resolved until the very same year the loan to Cortland was made.

13. Yet, despite Melcher's long formal attorney-client relationship with Cortland (to say nothing of his relationship with Murphy and Nguyen), Melcher's loan transaction was grossly unfair to Cortland. Among other things, Melcher charged his client Cortland an exorbitant

interest rate which was commercially unreasonable under the circumstances (between 14% and 18%) and prevented Cortland from pre-paying the loan under any circumstances, even with a penalty. In fact, Melcher, in his capacity *as Pearl Switch's lawyer*, actually denied Cortland's later request, in May 2021, to pre-pay the loan, despite the fact that he was simultaneously still acting as *Cortland's lawyer* as well.[1]

14. At no point in time did Melcher explain that he was only representing Pearl Switch and not Cortland. Nor did Melcher ever attempt to explain to Cortland the various actual and potential conflicts arising from his ownership interest in, and representation of, Pearl Switch while he was still representing Cortland as its lawyer.

15. Finally, Melcher even had the audacity to make *himself the trustee in the deed of trust in the loan documents*. The trustee becomes a special agent for both the debtor and the lienholder and must act with absolute impartiality and fairness in conducting a foreclosure. *Hammonds v. Holmes,* 559 S.W.2d 345, 347 (Tex. 1977). Yet, as the trustee, Melcher was granted the power to foreclose on the property in the event of a default by Cortland, even though he was simultaneously counsel for both Cortland, as the borrower, and Pearl Switch, as the lender. In other words, in effect, he granted himself (as the actual lender) *the power to foreclose on his own client's property*.

16. That Melcher did not recognize a problem with this transaction at the time—and, to this day, apparently still does not understand the gravity of his malfeasance—is stunning.

## V.   First Count:  Breach of Fiduciary Duty

17. Cortland Energy reasserts and incorporate all allegations set forth herein.

---

[1] On December 2, 2021, Pearl Switch, acting through Melcher, sued Murphy, Nguyen and Bejarano to enforce the guaranty. *See Pearl Switch, LLC vs. Andrew William Bejarano, Stephen Thomas Murphy and Huan Cong Nguyen,* Cause No. 2021-78729 (152nd District Court).

18.     When a fiduciary profits or benefits in any way from a transaction with the beneficiary, a presumption of unfairness arises that shifts the burden of persuasion to the fiduciary or the party claiming the validity or benefits of the transaction to show that the transaction was fair and equitable to the beneficiary. *Keck, Mahin & Cate v. National Union Fire Insurance Co. of Pittsburgh,* 20 S.W.3d 692, 699 (Tex.2000); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 509 (Tex. 1980); *Archer v. Griffith,* 390 S.W.2d 735,739 (Tex. 1964). A presumption of unfairness also arises and the burden of proof shifts to the fiduciary if the fiduciary places himself in a position in which his self-interest might conflict with his obligations as a fiduciary. *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257, 260-61 (Tex.1974) (fiduciary's position as trusted business advisor, holding power of attorney for donors, and as director and officer of donee created presumption of unfairness in transactions); *Slay v. Burnett Trust*, 187 S.W.2d 377, 387-88 (Tex.1945) (duty of loyalty prohibits trustee from placing himself in any position in which his self-interest will or may conflict with his obligations as trustee).

19.     Here, there is no question that Pearl Switch was a fiduciary to Cortland because its owner, Melcher, had a formal fiduciary relationship with Cortland as its counsel. Nor is there any question that Pearl Switch benefited from its transaction with Cortland; it benefited handsomely. Thus, Pearl Switch must prove by a preponderance of the evidence that it complied with its fiduciary duty to Cortland. This it cannot do.

20.     Pearl Switch cannot show that:

    a. The transaction was fair and equitable to Cortland;

    b. Pearl Switch acted in the utmost good faith and exercised the most scrupulous honesty toward Cortland;

    c. Pearl Switch placed Cortland's interests before its own and did not use the


       advantage of its position to gain any benefit for itself at their expense; and

       d. Pearl Switch fully and fairly disclosed all important information to Cortland concerning the loan transaction.

21. Pearl Switch must prove every one of these elements to prevail in this Adversary Proceeding—a fool's errand under these facts.

22. As a result of Pearl Switch's breach of fiduciary duty, Cortland has been damaged.

23. Also, because Pearl Switch acted with a specific intent to cause substantial injury to Cortland, exemplary damages are appropriate and should be awarded.

### VI.    Agency, Respondeat Superior, and Vice-Principal Liability

24. Cortland reasserts and incorporates all allegations set forth herein.

25. At all relevant times, Melcher was a member, manager, or authorized agent of Pearl Switch, and he committed his wrongful actions in the course and scope of his employment and agency relationship with, and in the furtherance of, Pearl Switch's business interests.

26. Because Melcher was acting as a vice principal and in an agency capacity, Pearl Switch, in addition to its direct liability, is vicariously liable to Cortland for Cortland's actual damages and for exemplary damages.

27. Also, because Pearl Switch acted with a specific intent to cause substantial injury to Cortland, damages are appropriate and should be awarded.

### VII.    Request for Equitable Subordination

28. Cortland reasserts and incorporates all allegations set forth herein.

29. Through Melcher's ownership in Cortland and through Melcher's attorney-client relationship with Cortland and its other owners, Murphy and Nguyen, Pearl Switch was an insider to Cortland at all material times, including at the time of the loan transactions that are the subject of this Complaint.


30. As set forth above, in his capacity as a fiduciary, insider, and person in control of Cortland, Melcher committed the breaches of fiduciary duty described in part IV above.

31. The conduct was inequitable.

32. The conduct injured Cortland Energy and conferred an unfair advantage to Pearl Switch.

33. For these reasons, the Cortland indebtedness to Pearl Switch should be equitably subordinated to the claims of all other creditors and to the interest of all other owners of the company. *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692 (5th Cir.1977)

### Prayer

Plaintiff prays that the Court enter judgment (1) declaring that the loan agreement between Pearl Switch and Cortland is void and unenforceable; (2) ordering Pearl Switch to return all payments made by Cortland; (3) awarding Cortland consequential and exemplary damages, and (4) equitably subordinating Pearl Switch's claim to the claims of all other creditors and to all other interest owned in the Cortland.

Respectfully submitted:

By: /s/F. Andino Reynal
F. Andino Reynal
SPN:   02328405
TBN:   24060482
917 Franklin Street, Suite 600
Houston, Texas 77002
Office Phone:  713.228.5900
Facsimile:  713.820.6981
areynal@frlaw.us

ATTORNEYS FOR CORTLAND ENERGY LLC